<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ROBERTA K. VANORDEN,**<br><br>      Plaintiff,<br><br>      v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>      Defendant. | Civil Action No. 21-19985 (ZNQ)<br><br>**OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court on Plaintiff Roberta K. Vanorden's appeal of the Social Security Administration's denial of her request for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423, *et seq.* (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. §§ 405(g) and 1383(c), and reaches its decision without oral argument under Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. After reviewing the parties' submissions and the Administrative Record ("AR"), the Court finds that the Administrative Law Judge's decision was based on substantial evidence and that he was properly vested with the authority to render his decision. Accordingly, the decision will be AFFIRMED.

**I.  BACKGROUND**

The issues before the Court are: (1) whether the Administrative Law Judge ("ALJ") ignored evidence supportive of disability and failed to articulate the basis for his dispositive findings; and (2) whether remand is required because the ALJ and the ALJ Appeals Council members were not properly appointed.

A. **Procedural Posture**

On April 2, 2016, Plaintiff Roberta K. Vanorden ("Plaintiff") filed an application for Disability Insurance Benefits ("DIB"), alleging that the onset of her disability started on July 8, 2015. (ECF 5-2, AR 267.) The Social Security Administration ("SSA") denied the request both initially and on reconsideration. (*Id*. at 86, 97.) Thereafter, Plaintiff requested a hearing, and a hearing was held on July 17, 2018. (*Id*. 32-59.) In November 2018, the presiding ALJ issued a decision, finding that Plaintiff was not disabled, and Plaintiff appealed. (*Id*. 32-59, 121-31.) Upon review, the SSA's Appeals Council concluded that the ALJ erred, and thus vacated the ALJ's November 2018 decision and remanded the matter for further consideration. (*Id*. at 138-40.)

On remand, on December 11, 2020, the same ALJ held a hearing. (*Id*. at 60-85). On February 23, 2021, the ALJ issued a decision pursuant to Title II of the Social Security Act ("Act"), again finding that Plaintiff was not disabled. (*Id*. at 13-24). Subsequently, Plaintiff appealed, and in September 2021, the Appeals Council denied Plaintiff's request for a review of the February 2021 decision (*Id*. at 1-6). Accordingly, Plaintiff initiated her appeal before this Court. (ECF No. 1.)

Plaintiff filed her Opening Brief ("Pl's Br,") on March 21, 2022, (ECF No. 8); the Commissioner filed an Opposition Brief ("Opp'n Br,") on May 3, 2022 (ECF No. 9); and Plaintiff filed a Reply ("Pl's Reply,") on May 18, 2022 (ECF No. 10.)

B. **The ALJ's Decision**

On February 23, 2021, the presiding ALJ, Judge Peter R. Lee, determined that Plaintiff was not disabled under the prevailing Administration regulations. (*See generally* AR 13-24.) The ALJ set forth the five-step process for determining whether an individual is disabled. (*Id*. at 14-15 (citing 20 C.F.R. § 416.920(a)). At step one, the ALJ found that Plaintiff had not "engaged in substantial gainful activity" since the disability onset date, July 8, 2015. (*Id*. at 15 (citing 20 C.F.R.

2

§ 416.971 et seq.)  At step two, the ALJ found that Plaintiff suffered from several severe impairments, including "osteoarthritis of the right knee, degenerative disc disease with radiculopathy, asthma, chronic laryngitis/paresis of the vocal cords (left), and obesity." (*Id*. (citing 20 C.F.R. § 404.1520(c))0(c)).)  At step three, the ALJ determined that Plaintiff did not have "an impairment or combination of impairments" that qualified under the Administration's listed impairments.  (*Id*. at 17 (citing 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.)

Before proceeding to step four, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to "perform sedentary work" as the regulations define that term, with the added requirement of an option to stand or change position from a seated position every half hour for up to two minutes to stand or change position. (*Id*. at 18 (citing 20 C.F.R. § R 404.1567(a)).  At the fourth step, the ALJ concluded that Plaintiff "is unable to perform her past relevant work as a teller."  (*Id*. at 22 (citing 20 C.F.R. § 404.1565).)  At the fifth step, however, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy" that Plaintiff could perform. (Id. at 23 (citing 20 C.F.R. §§ 404.1569, 404.1569a.)

## II.     LEGAL STANDARD

On appeal, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001).  To survive judicial review, the Commissioner's decision must be supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 401(1971); *see Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citing *Consol. Edison Co. v.*

3

*NLRB*, 305 U.S. 197, 229, (1938)).  In other words, substantial evidence "may be somewhat less than a preponderance of the evidence."  *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In reviewing the record for substantial evidence, the court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder."  *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation omitted).  Even if the court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence in the record.  *Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001).  The court must "review the record as a whole to determine whether substantial evidence supports a factual finding."  *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Commissioner of SSA*, 181 F.3d 429, 431 (3d Cir. 1999)).  "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason," courts require an explanation from the ALJ of the reason why probative evidence has been rejected to determine whether the reasons for rejection were improper.  *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981) (internal citation omitted).

### III.  DISCUSSION

#### A.  Whether the ALJ Erred in Formulating the RFC

In arguing that the ALJ erred in formulating the RFC, Plaintiff first contends that the analysis is deficient because it does not account for her mental impairments.  At step four, the RFC assessment is where the ALJ determines whether, despite limitations, the claimant retains the capacity to perform her past relevant work.  *See Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007); *see also* 20 C.F.R. § 404.1545(a)(5)(i).  In making an RFC determination, "the ALJ must consider all evidence before [him]."  *Burnett v. Commissioner of SSA*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).  However, the Third Circuit's holding in *Burnett* "does not require the ALJ to use particular language or adhere to a particular

4

format in conducting [his] analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett*, 220 F.3d at 120).

Plaintiff argues that the ALJ failed to properly consider and make a comprehensive finding regarding Plaintiff's mental impairments. Pl's Br. 8. She cites the ALJ's finding that she suffers from "mild limitations in every single area of mental functioning," which indicates that her ability to function "independently, appropriately, effectively, and on a sustained basis" is thus slightly limited. *Id*. at 7. Plaintiff also argues that the ALJ's findings are deficient because they fail to explain the differences between its more recent assessment of Plaintiff's mental limitations as compared to its assessment in the ALJ's 2018 decision. *Id*. at 8. Additionally, Plaintiff argues that the ALJ failed to consider Plaintiff's multiple spinal surgeries and its effect on her ability to sustain work on a regular and consistent basis. *Id*. at 9.

After a careful review of the record, the Court disagrees. Prior to turning to Steps 4 and 5 of the RFC, the ALJ conducted a thorough assessment of Plaintiff's mental impairments at Steps 2 and 3 of the sequential evaluation process. The ALJ found that "claimant's medically determinable mental impairments of anxiety and depression, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." *Id*. In reaching this determination, the ALJ considered Plaintiff's score in the "mild" range on the Beck Anxiety and Depression Inventories, and her results on the Personality Assessment Screener (PAS), which were deemed "within normal limits." *Id*. Additionally, the ALJ found that her other mental examinations revealed "no more than mild levels of anxiety and depression" with no evidence of delusions, hallucinations, or thought disorder. *Id*. Furthermore, Plaintiff's mental examinations highlighted that, "claimant attributed

5

sleep difficulties to lumbar spine pain, not due to any mental impairment." *Id*. Specifically, the ALJ explained that Plaintiff's other examinations, including an assessment of her recent and remote memory, her mood and affect, her speech and behavior, and judgment and cognition, all received an evaluation score of normal. *Id*.

Moreover, the ALJ made a finding for each of the broad functional areas outlined in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1.) *Id*. In the first functional area, which includes understanding, remembering or applying information, the ALJ determined Plaintiff has mild limitations. *Id*. In the second functional area, commonly referred to as interacting with others, the ALJ determined Plaintiff has mild limitation but noted that Plaintiff interacted "adequately with all treating practitioners." *Id.* at 16–17. Regarding the third functional area, the ALJ determined that Plaintiff has mild limitation in concentration; however, her limitation does not adversely affect her ability to follow directions. *Id*. at 17. And lastly, in the fourth functional area, the ALJ concluded that Plaintiff has mild limitation in adapting or managing oneself, although he noted that treating practitioners observed no hygiene deficiencies and that Plaintiff did not display any appetite disturbances. *Id*. Ultimately, the ALJ determined that, "[b]ecause the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere [sic] (20 CFR 404.1520a(d)(1))." *Id*.

Thus, when the ALJ proceeded to Steps 4 and 5 of the sequential evaluation process to evaluate Plaintiff's mental residual functional capacity, the ALJ explicitly found that "[t]he severity of the claimant's mental impairment did not meet or medically equal the criteria of listings 12.04 and 12.06." *Id*. at 18. In reaching this decision, the ALJ explained that because Plaintiff

6

was determined to have mild limitation in Steps 2 and 3, her mental impairment in all four broad functioning areas did not meet the requirements established in Steps 4 and 5. *Id*. Although Plaintiff implies that the ALJ's recitation is insufficient at Steps 4 and 5, the law does not support this argument. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019) ("[N]o incantations are required at steps four and five simply because a particular finding has been made at steps two and three.")[1]

Additionally, despite Plaintiff's arguments to the contrary, the Court finds that the ALJ did consider Plaintiff's spinal surgeries. In determining whether Plaintiff has "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)," the ALJ considered the condition of Plaintiff's spine. *Id*. at 17. Specifically, the ALJ found that, "[a]lthough appropriate medical evidence established some degenerative disc disease of the spine, the evidence does not satisfy the criteria of listing 1.04." *Id*. The ALJ went on to explain that because Plaintiff does not have, "nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in an inability to ambulate effectively," she does not meet the statutory requirement. *Id*.

Given the ALJ's thorough discussion of Plaintiff's impairments, the Court finds no deficiency in the RFC analysis. The presiding ALJ adequately incorporated Plaintiff's mental limitations and physical health, including her spinal condition, in the RFC analysis and explained how such evidence impacted his RFC determination. Therefore, the Court rejects Plaintiff's first argument.

---

[1] Plaintiff similarly argues that the ALJ's failure to explain changes between the 2018 decision and the 2021 decision is in violation of her Due Process rights. Pl's Br. 8. This argument lacks merit because it is well-recognized that "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001).

### B. Whether the Appointment of the ALJ and the Members of the Appeals Council Was Unconstitutional Such That the Decision by the SSA was Constitutionally Defective.

Plaintiff alleges that the ALJ and the Appeals Council members that presided over her case were not properly appointed by then-Acting Commissioner of Social Security, Nancy Berryhill, such that their decision is not binding. Pl's Br. 13. In objecting to the constitutionality of the ALJ's appointment, Plaintiff argues that then-Acting Commissioner Nancy A. Berryhill ("Berryhill") exceeded the statutory term limit under the Federal Vacancies Reform Act ("FVRA") when she ratified the appointments of the ALJs and the Appeals Council members who worked for the Social Security Administration. *Id*.

Under the FVRA an acting officer may fill a vacancy "(1) for no longer than 210 days beginning on the date the vacancy occurs; or (2). . . once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate." 5 U.S.C. § 3346(a). Berryhill began serving as Acting Commissioner in January 2017, and under 5 U.S.C. § 3346(a)(1), her term expired on November 16, 2017. Pl. Br. at 13; Opp'n Br. at 7.

Following the expiration of Berryhill's initial term, as of November 17, 2017, the position of Commissioner became vacant. *See* 5 U.S.C. § 3348. On April 17, 2018, Andrew Saul was nominated for the position of Commissioner. Opp'n Br. at 9. Upon submission of the nomination, the SSA interpreted 5 U.S.C. § 3346(a)(2) to permit Berryhill to resume her role as Acting Commissioner during the nomination's pendency. *Id*. at 11. On July 16, 2018, Berryhill ratified the appointments of all SSA ALJs, including the ALJ in this case. Pl's Br. 14; Opp'n Br. 7. Berryhill continued to serve as Acting Commissioner until June 17, 2019, when her successor, Andrew Saul took office. Pl's Br. 14.

Because Berryhill's term had already expired in November 2017, Plaintiff claims that 5 U.S.C. § 3346(a) did not allow Berryhill to resume her role as Acting Commissioner and thus, her appointment of Plaintiff's ALJ, exceeded her statutory authority. *Id*. Therefore, Plaintiff argues that, because the ALJ who decided Plaintiff's case was not lawfully appointed, under *Carr v. Saul*, she is entitled to a de novo hearing on remand before a new ALJ. *Id*. at 13 (citing 141 S.Ct. 1352, 209 L. Ed. 2d 376 (2021)). Plaintiff offers no independent arguments of her own as to the appropriate statutory interpretation of 5 U.S.C. § 3346(a) and instead, relies on a decision from the District of Minnesota, *Brian T.D. v. Kijakazi*, 580 F. Supp. 3d 615 (D. Minn. 2022). In *Brian T.D.*, the court held that because the initial 210-day term for Berryhill's acting service had expired prior to the submission of Saul's nomination in April 2018, Berryhill could not return to her position as Acting Commissioner while Saul's nomination was pending, and thus, could not lawfully ratify and approve the July 2018 ALJ appointments. 580 F. Supp. 3d at 629–32.

Plaintiff urges the Court to follow the decision in *Brian T.D.* In *Brian T.D.*, the court interpreted § 3346(a) to only apply to a person "presently serving" as Acting Commissioner at the time of a nomination. *See* 580 F.Supp.3d at 629. In doing so, the court found that subsections (a)(1) and (a)(2) to be mutually exclusive, such that acting service ended upon the expiration of the initial 210-day time limit absent a nomination. *Id*. at 631. Therefore, at the time of Saul's nomination, Berryhill's acting service had ended, and thus in accordance with the court's interpretation in *Brian T.D*. she was not "presently serving" and § 3346(a)(2) was inapplicable. *See* id. at 632.

However, as the SSA points out, numerous other district courts have reached the opposite conclusion. Proper statutory interpretation begins with an analysis of the plain text. *Ross v. Blake*, 578 U.S. 632, 638, (2016*); see also Douglass v. Convergent Outsourcing*, 765 F.3d 299, 302 (3d

9

Cir. 2014). "The role of the courts in interpreting a statute is to give effect to Congress's intent," and thus, "it is presumed that Congress expresses its intent through the ordinary meaning of its language." *Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 202 (3d Cir. 1998) (citations omitted). To determine whether the statutory language is sufficiently precise and unambiguous, the Court "must examine the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001).

This Court finds that a plain reading of § 3346(a) outlines when an acting officer may serve. 5 U.S.C. § 3346(a) (framing subsections (1) and (2) as instances when "the person serving as an acting officer as described under section 3345 may serve in the office"). The text of § 3346(a) uses the word "or" without the use of any qualifying language. *See* 5 U.S.C. § 3346(a)(1)-(2). The Court construes "or" in this provision—in its common conjunctive sense[2]—to permit acting service during either or both periods: (1) for 210 days upon the date a vacancy occurs; <u>or</u> (2) during the pendency of a nomination if that nomination was submitted after the 210-day term expired.

Moreover, as noted above, several other courts, including two in this district, have rejected the Minnesota court's reading in *Brian T.D.*, and have uniformly held that that § 3346(a)(2) enables Berryhill to "spring back" into her role as Acting Commissioner as of the date that Andrew Saul was nominated for Commissioner in April 2018. *See Hernandez v. Kijakazi*, Civ. No. 22-01556,

---

[2] The Third Circuit has stated that whether the word "or" makes statutory provisions conjunctive or disjunctive is context dependent. *United States v. One 1973 Rolls Royce, V.I.N. SRH-16266 By & Through Goodman*, 43 F.3d 794, 815 (3d Cir. 1994). The Court therefore turns to the Legislative history for § 3346. In discussing the specific statutory provision at issue here, the Committee on Governmental Affairs stated, "[u]nder new section 3346(a)(2), and subject to section 3346(b), an acting officer may serve more than 150 days if a first or second nomination is submitted to the Senate, and may serve while that nomination is pending from the date the nomination is submitted. The acting officer may serve even if the nomination is submitted after the 150 days has passed although, as discussed below, the acting officer may not serve between the 151st day and the day the nomination is submitted." See S. Rep. No. 105-250, 105th Cong., 2nd Sess. 1998, 30 (July 15, 1998). As such, it is clear that Congress intended for the same individual to serve as an acting official for the initial 210-day period, under § 3346(a)(1), and, if a nomination was submitted after that period, to resume acting service upon that nomination, under § 3346(a)(2).

2022 WL 17751355 (D.N.J Dec. 19, 2022)); *Bernadette H. v. Comm'r of Soc. Sec.*, Civ. No. 21-20586, 2022 WL 17080743 (D.N.J. Nov. 18, 2022)); *Bauer v. Kijakazi*, Civ. No. 21-2008, 2022 WL 2918917, N.D. Iowa July 25, 2022) (quoting *Williams v. Kijakazi*, Civ. No. 21-141, 2022 WL 2163008, (W.D.N.C. June 15, 2022)). Based on the Court's above analysis and the weight of this authority, the undersigned concludes that Berryhill was validly serving as Acting Commissioner when she ratified the appointments of the ALJs and the Appeals Counsel members on June 16, 2018. Because those appointments were proper, Plaintiff's argument that the officials did not have authority to adjudicate her case is without merit.

IV.    **CONCLUSION**

For the foregoing reasons, the Court will AFFIRM the ALJ's decision. An appropriate Order will follow.


**Date: December 27, 2022**

                                                  s/ Zahid N. Quraishi
                                                  **ZAHID N. QURAISHI**
                                                  **UNITED STATES DISTRICT JUDGE**